IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **SETH WIGGENS**, <br><br>                                **Plaintiff**, <br><br> v. <br><br> **TEAM ONE LOGISTICS, LLC**, <br><br>                                **Defendant**. | Case No. 23-1096-DDC-ADM |

**MEMORANDUM AND ORDER**

In May 2023, plaintiff Seth Wiggens filed this individual action against defendant Team One Logistics, LLC, plaintiff's former employer. Doc. 1. Plaintiff contends that defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–19 ("FLSA"), by its "practice and policy" of having plaintiff work over 40 hours a week but "willfully failing and refusing to pay straight time and overtime compensation due and owing to Plaintiff." *Id.* at 1. Plaintiff seeks damages—as provided by 29 U.S.C. § 216(b)—in the amount of unpaid overtime compensation for work performed in excess of 40 hours in a work week, plus liquidated damages. Defendant denies plaintiff's allegations, asserting that plaintiff was an exempt employee under the FLSA's Motor Carrier Act (MCA) Exemption, 29 U.S.C. § 213(b)(1) and the FLSA's professional executive exemption, 29 U.S.C. § 213(a)(1). The FLSA's maximum hour requirement—found in 29 U.S.C. § 207—doesn't apply to an exempt employee. 29 U.S.C. § 213.

The parties engaged in settlement negotiations over a period of six months and now report that they have reached a settlement. Doc. 12 at 2–3. Plaintiff and defendant have filed a

Joint Motion for Approval of FLSA Settlement (Doc. 12), and ask the court to approve the FLSA settlement. For reasons explained below, the court grants plaintiff and defendant's joint motion and approves the FLSA settlement.

## I. Background

### *Plaintiff's Employment*

Plaintiff worked for defendant as a dock worker and "on occasion" did "some driving" of a "cargo van." Doc. 1 at 2 (Compl. ¶ 5). Plaintiff alleges that defendant expected plaintiff regularly to "work in excess of forty hours in a workweek." *Id.* at 3 (Compl. ¶ 10). Plaintiff contends that he routinely complied and worked over 40 hours a week, but he didn't receive full "overtime premiums" for these excess hours. *Id.* (Compl. ¶ 11). Plaintiff allegedly worked these overtime hours from October 19, 2021, until his separation from defendant on November 6, 2022. Doc. 12-1 at 3 (Brown Decl. ¶¶ 11–12); Doc. 12-2 at 2.

### *Procedural History and Negotiations*

On May 19, 2023, plaintiff filed a Complaint (Doc. 1) alleging that defendant had violated the FLSA in failing to pay him overtime premiums. Doc. 1 at 1. Over the next six months, plaintiff and defendant "talked at length . . . and exchanged information and documentation in the case to determine the extent of their claims and defenses and the risks associated with continuing to litigate[.]" Doc. 12 at 5. On August 11, 2023, one of plaintiff's attorneys filed a Motion to Withdraw (Doc. 8), and, on August 14, 2023, his other attorney filed a Notice of Joinder in Motion to Withdraw (Doc. 9). On August 21, 2023, the court granted the motion and allowed both attorneys to withdraw. Doc. 10. Plaintiff—now proceeding pro se— and defendant reached a settlement agreement, which they filed with the court on September 13, 2023. On the same date, the parties also filed a Joint Motion for Approval of FLSA Settlement (Doc. 12).

## II. Legal Standard

"Congress enacted the FLSA in 1938 with the goal of protecting all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (citation, quotation marks, and brackets omitted). Because the FLSA's "prime purpose" is "to aid the unprotected, unorganized and lowest paid of the nation's working population," *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945), parties must present a settlement of FLSA claims to the court "for review and a determination that the settlement is fair and reasonable." *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

"If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Gambrell v. Weber Carpet, Inc.*, No. 10-2131, 2012 WL 5306273, at *2 (D. Kan. Oct. 29, 2012) (citing *Lynn's Food Stores*, 679 F.2d at 1354). To approve an FLSA settlement, the court must determine whether: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned[,] and (3) the proposed settlement contains an award of reasonable attorney's fees." *Barbosa*, 2015 WL 4920292, at *5 (citing *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)). The court addresses each consideration, below.

## III. Analysis

### A. First Factor: Bona Fide Dispute

Before approving an FLSA settlement, the parties must submit sufficient information for the court to conclude that a bona fide dispute exists. *McCaffrey*, 2011 WL 32436, at *4 (citing

3

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). To satisfy this obligation, the parties must provide the court with:

> (1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Id.* The court, reviewing each piece of required information individually, finds that the parties here have submitted information sufficient for the court to find a bona fide dispute.

*First*, the parties provided the court with a description of the nature of the dispute. The dispute involves:

> [w]hether Plaintiff is actually entitled to overtime compensation under the FLSA during the majority, if not all, of the weeks that he was employed by Defendant, whether he is exempt from the overtime requirements of the FLSA, and what hours Plaintiff worked during the time for which his hours worked were not recorded.

Doc. 12 at 3. These disputes touch on coverage, exemption, and computation of hours, aligning with all three examples provided for a dispute's description. *McCaffrey*, 2011 WL 32436, at *4. So, the parties have established the first element—a bona fide dispute.

*Second*, the parties have provided the court with a description of the employer's business and the type of work performed by the employee. In his Complaint, plaintiff explained that he worked "on the dock" doing "a physical labor job involving significant lifting" and "on occasion" did "some driving" of "a cargo van that weighs less than 10,000 pounds." Doc. 1 at 2 (Compl. ¶ 5). Plaintiff also asserted that, though he "was called a 'lead' on the dock, he had no managerial authority[.]" *Id.* Though the Complaint (Doc. 1) and Joint Motion for Approval (Doc. 12) lack a full description of the employer's business, the court finds plaintiff's description

4

sufficient to understand the nature of plaintiff's work and to deduce a general understanding of defendant's business. The parties thus established the second element for a bona fide dispute.

*Third*, the parties have satisfied their obligation to provide the employer's reasons for disputing the employees' right to minimum wage or overtime. Defendant here contends that plaintiff was an exempt employee in two respects. One, the FLSA's MCA Exemption, 29 U.S.C. § 213(b)(1), allegedly exempts plaintiff because of his driving duties. Doc. 12 at 2; Doc. 12-2 at 2. Two, the FLSA's professional executive exemption, 29 U.S.C. 213(a)(1), allegedly exempts plaintiff because he was a "lead" on the dock. Doc. 12 at 2; Doc. 12-2 at 2. If plaintiff qualifies as an exempt employee under either the MCA Exemption or the professional executive exemption, the maximum hours provision in 29 U.S.C. § 207—at issue in this dispute—doesn't apply to plaintiff. In such a scenario, defendant wouldn't have violated the FLSA as alleged by plaintiff. In light of these potentially applicable exemptions, the parties satisfactorily provided the court with the employer's reasons for disputing the employee's right to overtime.

*Fourth*, the employee justified his right to the disputed wages. Plaintiff contests the application of these two exemptions to his employment situation. One, to contest that he falls under the MCA Exemption, plaintiff emphasizes the occasional nature of his driving duties and the insignificant size of the vehicle he drove—"a cargo van that weighs less than 10,000 pounds." Doc. 1 at 2 (Compl. ¶ 5). Two, to contest that he falls under the professional executive exemption, plaintiff explains the absence of managerial authority as a "lead" on the dock—he "did not set schedules, had no authority [to] conduct performance evaluations and did not have authority to hire or fire." *Id.* These limitations for his "lead" role call into question whether plaintiff qualified as an exempt employee under the professional executive exemption. If neither

exemption applies, then plaintiff has justified his right to the disputed wages as an employee under the FLSA's maximum hours provision.

*Fifth*, the parties provided the court with an estimate of the hours plaintiff worked and the applicable wage.  Plaintiff initially estimated that "he earned, but was not paid, over $20,000 in overtime pay," though he acknowledged that he would "need discovery of Defendant's records to make a precise estimate."  *Id.* at 4 (Compl. ¶ 22).  After conducting that discovery, the parties agreed on the hours worked and the applicable wages.  Based on plaintiff's "pay records from October 19, 2021, through June 11, 2022," the parties agreed that plaintiff is not "owed more than $1,318.25 in alleged unpaid overtime for that period[.]"  Doc. 12-2 at 2; *see also* Doc. 12-1 at 2 (Brown Decl. ¶ 11).  And based on plaintiff's "representations of the hours he worked from June 13, 2022 through the date of his separation from [defendant] (November 6, 2022)," the parties agreed that plaintiff is not "owed more than $3,681.75[.]"  Doc. 12-2 at 2; *see also* Doc. 12-1 at 2 (Brown Decl. ¶ 12).  The parties agree about this computation of hours worked and the applicable wages, based in part on defendant's records of time worked and in part on plaintiff's representation of time worked.  The computation of hours and applicable wages does not, therefore, contribute to the bona fide dispute.  But the language used to identify the fifth element—"if the parties dispute the computation"—suggests the parties may have a bona fide dispute even in this final element's absence.  And the parties' agreement about the hours doesn't mean they agree plaintiff is entitled to overtime pay for those hours.

The court concludes that the claims and defenses in this case present a bona fide dispute.  Given the disagreement about which exemptions, if any, apply to plaintiff's employment, a bona fide dispute exists whether defendant violated the FLSA, with the potential for either side to prevail if the case continued.

### B.    Second Factor:  Fair and Equitable

The court next considers whether the proposed settlement is a fair and equitable one.  To qualify as "fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."  *Solis v. Top Brass, Inc.*, No. 14-cv-00219, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014).  To determine if the proposed settlement is fair and equitable, courts regularly examine the factors applying to proposed class action settlements under Rule 23(e).  *Tommey v. Comput. Scis. Corp.*, No. 11-CV-02214, 2015 WL 1623025, at *2 (D. Kan. Apr. 13, 2015).  Those factors include:

> (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable.

*Id.*  After reviewing the parties' proposed settlement, the court finds that it satisfies the Rule 23(e) factors.

*First*, the parties fairly and honestly negotiated their settlement.  The parties, over the course of six months, "participated in extensive discussions concerning the number of hours worked by Plaintiff . . . , the type of work performed by Plaintiff . . . , and Defendant's defenses to Plaintiff's claims."  Doc. 12 at 2.  The parties' joint motion stated that they reached their agreement after "arm's length negotiations" where the parties "vigorously defended their respective positions while considering the legal and factual position of the other[.]"  *Id.*  And the settlement agreement, signed by both parties, states that the "Agreement has been fully and fairly negotiated by the Parties[.]"  Doc. 12-2 at 6.  Thus, the first factor favors finding the proposed settlement fair and equitable.

*Second*, serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt.  As discussed above, the parties disagree whether plaintiff's employee

7

classification falls under the MCA exemption, the professional executive exemption, or neither exemption.  *See* Doc. 12 at 2.  This disagreement presents serious questions of law and fact because either exemption, if applied, would negate plaintiff's claim under the FLSA.  The parties also note that "a judge or jury could likely find entirely in the favor of either party after expenditure of significant and valuable time and resources."  *Id.* at 4.  So, the second factor also suggests the court should find the settlement fair and equitable.

*Third*, the value of an immediate recovery here outweighs the mere possibility of future relief after protracted and expensive litigation.  The parties assert in their joint motion that these types of "[m]isclassification claims are complicated and difficult to prove and defend."  *Id.* at 2–3.  The lack of documentation for one of the relevant time periods, "when records of hours worked were not maintained," amplifies that complexity here.  *Id.* at 3.  The parties also note, in their joint motion, the difficulty in evaluating "how a jury will interpret evidence in these cases."  *Id.*  The court recognizes the highest value cited at any point during this dispute is $20,000—a sum that any extended amount of litigation would quickly overwhelm.  And the parties themselves express a desire to "avoid the significant expenses and risks associated with the continued litigation of the complex claims in this action[.]"  *Id.*  The settlement agreement memorializes this sentiment, stating that the parties wish "to avoid the costs and disruption associated with continued litigation[.]"  Doc. 12-2 at 2.  All of these considerations indicate an immediate recovery is preferable to the mere possibility of recovery after potentially significant litigation expenses, and so the third factor also favors finding the settlement is fair and equitable.

*Fourth*, the parties determined that the settlement is fair and reasonable.  The parties jointly confirm "that the Agreement represents a fair and equitable resolution of Plaintiff's FLSA claims[.]"  Doc. 12 at 4.  The parties also affirm that the settlement

agreement "is not a product of collusion between the Parties, nor is it the result of fraud or overreaching on the part of Defendant." *Id.* at 5. Finally, both parties "desire that the Court approve the settlement and the Agreement," finding it "in their respective best interests." *Id.* So, the fourth and final factor also indicates that the settlement agreement is fair and reasonable.

But, while these factors may demonstrate that a settlement agreement is fair and reasonable, our court recognizes that they aren't necessarily determinative. *See McCaffrey*, 2011 WL 32436, at *5 (explaining that the Rule 23(e) factors "provide a general framework for the Court's determination whether an FLSA settlement is fair, but they are not determinative"). In addition to the four factors listed above, the court also must determine whether "the proposed settlement is fair and equitable to all parties in light of the history and policy of the FLSA." *Gambrell*, 2012 WL 5306273, at *5. The court has reviewed the parties' proposed settlement with those considerations in mind. And, the court now examines two additional considerations to determine whether the settlement agreement is fair and equitable. They include: (i) whether there were opt-in plaintiffs and, if so, whether they received notice of the proposed settlement and an opportunity to object; and (ii) how plaintiff's counsel plans to distribute the settlement fund. *See James v. Boyd Gaming Corp.*, No. 19-2260, 2022 WL 4482477, at *10 (D. Kan. Sept. 27, 2022). The court addresses each consideration, in turn, below.

### 1. Opt-in plaintiffs

The FLSA doesn't require a fairness hearing like one required for settling Rule 23 class actions. *Tommey*, 2015 WL 1623025, at *1. But nonetheless courts routinely hold fairness hearings in FLSA actions unless the parties demonstrate that the opt-in plaintiffs had notice of

the settlement and an opportunity to object. *Stubrud v. Daland Corp.*, No. 14-2252, 2015 WL 5093250, at *1 (D. Kan. Aug. 28, 2015) (first citing *Tommey*, 2015 WL 1623025, at *1; then citing *Goldsby v. Renosol Seating, LLC*, No. 2:08-0148, 2013 WL 6535253, at *10 (S.D. Ala. Dec. 13, 2013)).

As indicated earlier, plaintiff brings this action individually only, and not on behalf of anyone similarly situated. That is, this case involves no opt-in plaintiffs. In their absence, the concerns that normally lead to a fairness hearing—concerns that opt-in plaintiffs had notice of the settlement and an opportunity to object—don't present themselves. *Id.* In these circumstances, the court concludes that it needn't conduct a fairness hearing. And concern for fairness to opt-in plaintiffs, given that there are none, doesn't affect the court's fair and equitable settlement determination.

### 2. Plans to Distribute the Settlement Fund

The settlement agreement provides that defendant will pay plaintiff $10,000.00 "within ten (10) business days of its receipt of a fully executed Agreement and necessary tax form(s)[.]" Doc. 12-2 at 3. The agreement also specifies that defendant must make the payments to plaintiff by two checks: one, a "Payroll Check," in the gross amount of $5,000, "less applicable state, federal, and local taxes, as and for alleged unpaid wages" and the other a check for $5,000 "as and for alleged liquidated damages in connection with the alleged unpaid wages in the Litigation, with no taxes withheld[.]" *Id.* Defendant, according to the agreement, will make the checks payable to plaintiff and mail them to plaintiff at his home address. *Id.* Based on these provisions in the settlement agreement, the court concludes the agreement clearly outlines and provides a fair and reasonable means of the proposed settlement's distribution.

In sum, the court finds that the proposed settlement is fair and equitable under the Rule 23(e) factors, as well as other considerations "in light of the history and policy of the FLSA."

*Gambrell*, 2012 WL 5306273, at *5. Thus, the court finds that the parties' settlement here is a fair and equitable settlement under the FLSA.

### C. Third Factor: Reasonable Attorney's Fees

Last, the court considers the third factor for approving an FLSA settlement: whether the proposed settlement contains an award of reasonable attorney's fees. The FLSA requires the parties to a settlement agreement to include an award of reasonable attorney's fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2 (citing *Lee v. The Timberland Co.*, No. C 07-2367, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008)). The court has discretion to determine the amount and reasonableness of the fee, but the FLSA fee award nevertheless is mandatory. *Barbosa*, 2015 WL 4920292, at *4 (citations omitted).

Here, in the parties' joint motion, plaintiff "represents that he did not incur attorney's fees in connection with his claims in this action." Doc. 12 at 5. One of plaintiff's two attorneys, Donald N. Peterson, filed a Motion to Withdraw (Doc. 8) on August 11, 2023, and the other, Sean M. McGivern, filed a Notice of Joinder in Motion to Withdraw (Doc. 9) on August 14, 2023. The withdrawal motion states the attorneys' office filed plaintiff's Complaint (Doc. 1) on May 19, 2023, and that now plaintiff has decided to proceed pro se. Doc. 8 at 1. On August 21, 2023, the court granted the Motion to Withdraw, terminating both attorneys as counsel for plaintiff. Doc. 10. The court concludes that a settlement without any fee award is appropriate in these circumstances, despite the mandatory nature of FLSA fee awards, given plaintiff's representation and the attorneys' withdrawal. The absence of reasonable attorney's fees doesn't, in this case, prevent the court from approving the FLSA settlement.

### IV. Conclusion

The court concludes the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to both parties. *Barbosa*, 2015 WL 4920292, at *5 (citing

11

*McCaffrey*, 2011 WL 32436, at *2).  The court also concludes that the absence of an award of reasonable attorney's fees doesn't preclude the court from approving the proposed settlement because plaintiff represents that he incurred no attorney's fees here.  For these reasons, the court grants the parties' Joint Motion for Approval of FLSA Settlement (Doc. 12).

       **IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' Joint Motion for Approval of FLSA Settlement (Doc. 12) is granted.

       **IT IS SO ORDERED.**

       Dated this 6th day of December, 2023, at Kansas City, Kansas.

                                       **s/ Daniel D. Crabtree**
                                       **Daniel D. Crabtree**
                                       **United States District Judge**